IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | NO. 09-155-9 |
| JESSE ZAYAS | : | |

**OPINION**

**Slomsky, J.**  **March 4, 2011**

## I. INTRODUCTION

Defendant Jesse Zayas has filed a Motion to Revoke or Amend the Detention Order of July 26, 2010 (Doc. No. 233).[1] The Motion was filed on February 11, 2011. On February 14, 2011, the Government filed a response in opposition to Defendant's Motion to Revoke or Amend the Detention Order of July 26, 2010 (Doc. No. 236). On February 18, 2011, the Court held a hearing on Defendant's Motion. Counsel for Defendant and the Government presented arguments in support of their respective positions. Four witnesses testified on behalf of Defendant. After consideration of the arguments, briefs of Counsel, and the record in this case, the Court will deny Defendant's Motion to Revoke or Amend the Detention Order of July 26, 2010.

## II. BACKGROUND

On April 28, 2010, a grand jury returned the Superceding Indictment (Doc. No. 9) charging Defendant in five (5) counts with the following offenses:

---

[1] Defendant appeared before United States Magistrate Judge David R. Strawbridge for an Arraignment and Detention Hearing on July 26, 2010 and stipulated to Pretrial Detention.

1

> (1) Conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d) (one count);
>
> (2) Conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) (one count);
>
> (3) Conspiracy to commit kidnaping in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(5) (one count);
>
> (4) Distribution of 50 grams or more of cocaine base ("crack") in violation of 21 U.S.C. § 841(a) (one count); and
>
> (5) Distribution of controlled substances on public housing authority property in violation of 21 U.S.C. § 860(a) (one count).

The maximum sentence for these offenses is life imprisonment with a mandatory minimum of twenty (20) years imprisonment. (Doc. No. 32 at 5.)

On July 21, 2010, Defendant was arrested on the Superceding Indictment. (Doc. Nos. 32 at 4; 236 at 2.) On July 26, 2010, United States Magistrate Judge David R. Strawbridge presided over Defendant's Arraignment and Detention Hearing and signed an Order showing that Defendant had stipulated to pretrial detention and entered a plea of not guilty. (Doc. No. 58.) Defendant appeared at the hearing with present defense counsel. (Doc. No. 233 ¶ 3.) As noted above, on February 11, 2011, Defendant filed a Motion to Revoke or Amend the Detention Order of July 26, 2010 (Doc. No. 233). On February 14, 2011, the Government filed a response in opposition. (Doc. No. 236.)

On February 18, 2011, the Court held a hearing on Defendant's Motion (the "Hearing"). At the Hearing, Defendant's Counsel proffered reasons why Defendant is neither a flight risk nor a danger to the community. First, Counsel argued that the charges against Defendant in the Superceding Indictment are "dated" because he has not been accused of engaging in any unlawful

behavior since 2008. (February 18, 2011 Hearing Transcript ("Hr'g Tr.") at 32:16-25.) Counsel further asserted that the Pretrial Services Report included the finding that Defendant was not a flight risk. (Id. at 33:11-13.) Moreover, four witnesses testified at the hearing and each presented testimony that in the two years prior to his arrest, Defendant had been gainfully employed and working long hours to maintain a house that he had recently purchased, where he resided with his girlfriend. Counsel also asserted that Defendant did not have a lot money and that he did not have contacts outside of the country. (Id. at 33:13-19.) The implication arising from the above arguments and evidence is that Defendant has strong motivation to remain in Pennsylvania and not to flee.

In his Motion, Defendant avers that the imposition and enforcement of certain conditions can ensure Defendant's presence at trial. (Doc. No. 233 ¶ 5.) At the Hearing, Counsel for Defendant elaborated upon this request and offered house arrest and electronic monitoring as adequate conditions to ensure Defendant's presence at trial. (Hr'g Tr. at 34:11-16, 36:2-5.) If released, Defendant plans to reside at the home he recently purchased with his girlfriend. Defendant's girlfriend, Brooke Medina, testified that Defendant would be welcome to return to the home. (Id. at 31:6-9.)

Defendant's Motion does not address the risk to the safety of the community if Defendant were released from custody. However, Counsel for Defendant addressed this matter at the Hearing. Counsel argued that Defendant's behavior in the two years leading up to his arrest was indicative of a man trying to redirect his life in a positive way and that Defendant was not participating in "at-risk" behavior. (Id. at 34:17–35:5.) The four witnesses presented by Defendant testified to his redirected life as well. Moreover, Counsel argued that the imposition

3

and enforcement of certain conditions can ensure that Defendant is not a danger to the community. (Id. at 36:2-8.) For example, Counsel offered house-arrest with electronic monitoring, prohibiting Defendant from leaving the house at all, even for work, and prohibiting access to a telephone and the internet. (Id. at 45:6-18.) Defendant has no assets to post as bail.[2] (Id. at 45:20–46:18.)

In response, the Government contends that the charges against Defendant raise the statutory presumption that Defendant is both a danger to the community and a flight risk and for these reasons he must be detained pending trial. The Government argues that Defendant has failed to offer sufficient evidence to rebut the presumption that Defendant is a danger to the community and a flight risk, especially in light of the severity of the crimes that Defendant is accused of committing. (Id. at 36:10–38:5.) The Government also argues that the evidence that Defendant has presented, consisting of his desire to be released, his ties to the community, his years off employment, and his residing with his girlfriend, is inadequate to overcome the statutory presumption. (Id.) Moreover, when Defendant was arrested on July 21, 2010, police searched his home and found Latin King's "literature" and paraphernalia. (Id.) According to the Government, this evidence undercuts the arguments that Defendant has moved beyond the group he associated with as alleged in the Superceding Indictment, and no longer seeks an affiliation with them. (Id. at 37:21–38:5.)

---

[2] Defendant owns a house valued at approximately $130,000. Defendant owes $128,000 on the mortgage on the house. (Id. at 6:14–7:1.) Defendant also owns a 2000 Chevrolet Blazer valued at approximately $6,000. This vehicle has been impounded by the police. (Id. at 8:17-24.)

## III. JURISDICTION

By moving for pretrial release, Defendant in essence is requesting a review of Magistrate Judge Strawbridge's July 26, 2010 Detention Order. This Court has jurisdiction to review the Magistrate Judge's Detention Order under 18 U.S.C. § 3145(b). Section 3145(b) "requires this Court to make a *de novo* determination of the findings of fact underlying the detention Order." United States v. Cole, 715 F. Supp. 677, 677 (E.D. Pa. 1998) (*citing* United States v. Delker, 757 F.2d 1390, 1394 (3d Cir. 1985)).

## IV. LEGAL STANDARD

Detention of a federal defendant prior to trial is controlled by the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq*. Pursuant to 18 U.S.C. § 3142(e)(1), a defendant may be detained pending trial:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community.

Furthermore:

> Subject to rebuttal by [a defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of the community if the judicial officer finds that there is probable cause to believe that [a defendant] committed-
>
> . . .
>
> (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.).

18 U.S.C. § 3142(e)(3)(A); see also United States v. Strong, 775 F.2d 504, 507 (3d Cir. 1985) (noting that, in enacting 18 U.S.C. § 3142(e), Congress explicitly equated these drug offenses

under the Controlled Substances Act with danger to the safety of the community for purposes of detaining a defendant pending trial).

## V. DISCUSSION

### A. Statutory Presumption Pursuant to 18 U.S.C. § 3142(e)(3)(A)

Defendant is charged in the Superceding Indictment with one count of violating the Controlled Substances Act, 21 U.S.C. § 841. This offense carries a mandatory minimum of ten years imprisonment. The statutory presumption that no conditions will reasonably assure the appearance of a defendant at trial or will reasonably assure safety of the community is therefore triggered. See 18 U.S.C. 3142(e)(3)(A).

The requisite probable cause for the presumption to apply is established by the grand jury finding sufficient evidence to support the charges contained in the Superceding Indictment. An indictment "is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986) (noting that although the Government always carries the burden of persuasion, the probable cause determination predicated on an indictment merely shifts the burden of producing lack of evidence of dangerousness onto the defendant); United States v. Levy, No. 08-393, 2008 WL 4978298, at *1 (E.D. Pa. Nov. 20, 2008) (noting that based on an indictment a defendant is subject to the statutory presumption against bail set forth in 18 U.S.C. § 3142(e)).

As further proof of probable cause to believe that Defendant committed an offense in violation of 21 U.S.C. § 841, the Government proffers that it possesses evidence against Defendant consisting of audio and video recordings, surveillance observations by law enforcement, seized controlled substances and weapons, and testimony of an agent of the Federal

Bureau of Investigation and various police officers who were involved in the investigation and arrest of Defendant. (Hr'g Tr. at 38:22–40:3; Doc. No. 32 at 2.)

Based on the foregoing, the statutory presumption that no condition or combination of conditions will reasonably assure Defendant's appearance at trial and the safety of the community is applicable in this case. See Suppa, 799 F.2d at 119; 18 U.S.C. § 3142(e)(3).

B. Factors to be Considered by the Court

Having found the statutory presumption applicable, the burden shifts to Defendant to rebut the presumption. Defendant may put forward rebuttal evidence including "'testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation,' or evidence of steady employment." Levy, 2008 WL 4978298, at *1 (quoting United States v. Perry, 788 F.2d 100, 115 (3d Cir. 1986)); see also Suppa, 799 F.2d at 120. Defendant may also proceed by proffer. See Suppa, 799 F.2d at 118 (citing Delker, 757 F.2d at 1390; 18 U.S.C. § 3142(f)). No single factor or combination of factors is dispositive. Levy, 2008 WL 4978298, at *1. The ultimate determination of this issue is for the Court "based on all evidence and arguments adduced." Id. The Court should consider Defendant's rebuttal evidence in light of certain factors, including: (1) the nature and circumstances of the offenses charged, including whether the offenses involve drugs or firearms; (2) the weight of the evidence against Defendant; (3) the history and characteristics of Defendant; and (4) the nature and seriousness of the danger to the community that would be posed by Defendant's release. See Levy, 2008 WL 4978298, at *1; 18 U.S.C. § 3142(g).

Defendant presented testimony from four witnesses concerning his character and employment status. His girlfriend of approximately two years, Brooke Medina, testified that

7

Defendant worked at Phillips Feed and Pet Supply from the time she met him prior to his arrest. (Id. at 7:9-14.) Medina stated that Defendant worked hard to make money to pay for the home they had purchased together. (Id. at 7:15–8:11.) She testified that Defendant was not involved in any criminal activity from the time she met him until his arrest. (Id. at 9:3-6.) Medina and Defendant started dating in December 2008, after the date of the offenses he is accused of committing in the Superceding Indictment. (Id. at 11:15-23.) Adam Wilson testified that he was a co-worker of Defendant at Phillips Feed and Pet Supply and that they had worked together for approximately four years. (Id. at 14:7-13.) Wilson testified that Defendant worked very long hours at a physically rigorous job. (Id. at 15:25–16:16.) Wilson stated that he never saw Defendant socially and that Defendant was always home with his girlfriend or working on his house. (Id. at 17:10-19.) Another co-worker, Danny Rodriguez, testified that he had worked with Defendant at Phillips Feed and Pet Supply for approximately four or five years. (Id. at 22:9-15.) Rodriguez stated that his girlfriend lives next-door to Defendant and he therefore saw Defendant often in the neighborhood. (Id. at 23:7-21.) He testified that he never saw a large group of people at Defendant's house. (Id. at 24:4-19.) He said that Defendant never went out to clubs or bars. (Id. at 24:1-8.) Finally, William Ruth testified that he has known Defendant for six years. (Id. at 27:3-8.) Ruth is the boyfriend of Defendant's aunt and, until Defendant purchased his own home, he used to see Defendant often at the home of his mother. (Id. at 27:6-18.) According to Ruth, Defendant never displayed violence or disrespect to the family. (Id. at 27:25–28:7.)

The Court shall consider this rebuttal evidence in light of the four factors. The first factor is the nature and circumstances of the offense charged. The offense charged against Defendant

that triggers the statutory presumption, 21 U.S.C. § 841(a), is inherently a serious offense as is evidenced by the presumption itself. Congress specifically found that "drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity . . . because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." Strong, 775 F.2d at 507 (citing S. Rep. No. 225, 98th Cong., 2d Sess. 20, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-96). Moreover, Defendant is charged with other serious crimes including conspiracy to commit murder and kidnaping. The serious and dangerous nature of these charges all weigh against granting pretrial release.

The second factor involves a consideration of the weight of the Government's evidence. The Government's proffer indicates that it possesses significant evidence of Defendant's involvement in the alleged crimes. The Government contends that it has video and audio recordings, surveillance observations by law enforcement officers, testimony of members of the Federal Bureau of Investigation and police agencies involved in the investigation and arrest of Defendant, and seized controlled substances and weapons. (Hr'g Tr. at 38:21–39:3; Doc. No. 32 at 2.) Moreover, the Government has proffered evidence that Defendant was linked to the conspiracy up until the day he was arrested, when the police found in Defendant's home literature relating to the organization referred to in the Superceding Indictment. (Id. at 37:18-20.) This contradicts Defendant's witnesses who testified that, to their knowledge, Defendant was not involved with any group at the time of his arrest. With the possible exception of Brooke Medina, Defendant's witnesses also testified that they did not see Defendant socially very often, leaving open the possibility that there are elements of his life about which they are unaware. For example, Ruth testified that he had no knowledge of Defendant's involvement with drugs, despite the fact

that he frequently saw Defendant before his incarceration for a drug conviction in 2003. (Id. at 29:4–30:2.) Accordingly, considering the totality of the evidence presented and the proffers, the weight of this evidence does not favor pretrial release.

With respect to the history and characteristics of Defendant, the third factor, Defendant has two prior convictions for drug-related offenses. Most recently, he was incarcerated for approximately two years on a state drug charge. In addition, Defendant is accused of being a high-ranking member of the conspiratorial group referred to in the Superceding Indictment, and there is evidence that until the day he was arrested, Defendant retained literature related to this group, which is evidence connecting him to it. At the Hearing, Defendant presented witnesses who attested to the fact that in the two years prior to his arrest Defendant was taking steps to lead a law-abiding life.

The Court has carefully considered this evidence. It is insufficient, however, to overcome the statutory presumption of danger to the community arising from the probable cause found by the grand jury, and the weight of the Government's evidence. Moreover, evidence of Defendant's past drug-related convictions and his connection to the conspiratorial group through literature found in his house on the day of his arrest all go against pretrial release.

Counsel for Defendant urges that house arrest with electronic monitoring will ensure Defendant's appearance at trial and the safety of the community. This combination of conditions, even with the additional conditions that Defendant refrain from using a telephone or computer, is insufficient to rebut the presumption that Defendant is a danger to the community or that he is a flight risk. See, e.g., United States v. Burgess, No. 2:09-cr-150, 2009 WL 2038148 (W.D. Pa. July 8, 2009) (denying the defendant's request for house arrest and electronic monitoring when

the defendant failed to rebut statutory presumption under 18 U.S.C. § 3142(e)); United States v. Williams, No. 08-201-4, 2009 WL 1544884 (E.D. Pa. June 2, 2009 ) (finding that given the nature of the crimes at issue and the severity of the punishment if defendant were to be convicted, electronic monitoring would not ensure appearance at trial or the safety of the community); United States v. Abdullahu, 488 F. Supp. 2d 433 (D.N.J. 2007) ("Electronic monitoring and home confinement do not guarantee that defendant will not flee or endanger the community."); United States v. Merlino, No. 99-363, 1999 WL 557943 (E.D. Pa. July 30, 1999) (finding that $1,000,000 in real estate designated for potential forfeiture, house arrest, and electronic monitoring would not reasonably assure appearance of the defendant at trial or the safety of the community.)

Defendant's history of drug-related conflicts with the law, the evidence proffered by the Government, and the probable cause supporting the charges in the Superceding Indictment lead to the conclusion that Defendant has not met his burden to rebut the statutory presumption that he is a potential danger to the community.

## VI. CONCLUSION

Based on the nature of the charges contained in the Superceding Indictment, the weight of the Government's proffered evidence against Defendant, Defendant's prior criminal record, and the statutory presumption applicable here, it is evident that at this stage in the proceeding no condition or combination of conditions will reasonably assure the safety of the community. Defendant has overcome the statutory presumption and met his burden with proffers and witnesses that he is not a risk of flight, as the Pretrial Services Report noted, but he has not done so with regard to the presumption of danger to the community if he is released on bail at this time. Accordingly, Defendant's Motion to Revoke or Amend the Detention Order of July 26, 2010

(Doc. No. 233) is denied.

       An appropriate Order follows.